1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8
9    Mary Elizabeth Schipke,                    No. CV 10-001-TUC-CKJ (BPV)
                                                No. CR 04-2195-TUC-CKJ (BPV)
                    Plaintiff,
10                                              **REPORT AND
     vs.                                        RECOMMENDATION**
11
12   United States of America,

13                    Defendant.

14        On January 4, 2010, Mary Elizabeth Schipke, presently confined in the Federal

15   Medical Center (FMC) Carswell in Fort Worth, Texas, Tucson, Arizona, filed a Motion

16   to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody pursuant to 28

17   U.S.C. § 2255 ("Motion") (Doc. 1, Crim.Doc. 503)[1]

18
19        Also pending before the Court is Schipke's "Motion for Emergency Court-Order

20   for Prison Law Library Time at FMC-Carswell." (Doc. 26)

21        Ordinarily, a court must conduct a hearing on a motion unless the motion "and the

22
23   files and records of the case conclusively show that the prisoner is entitled to no relief."

24   28 U.S.C. § 2255. The Motion, as well as the files and records, do conclusively establish

25   that Schipke is not entitled to relief. *See Shah v. United States*, 878 F.2d 1156, 1159 (9th

26
27   _____

28        [1] "Doc." refers to filings in the civil case. "Crim. Doc." refers to filings in the
     related criminal matter, CR 04-2195-TUC-CKJ (BPV).

Cir. 1989). Hence, no hearing is required.

Because no hearing is required, and for the reasons stated in the Court's previous rulings (Docs. 4, 22), the Magistrate Judge also recommends that Schipke's request to appoint counsel be denied.

## I. PROCEDURAL BACKGROUND[2]

Schipke was arrested and indicted for threatening to use a weapon of mass destruction in violation of 18 U.S.C. § 2332a(a)(3), and for willfully making a threat in violation of 18 U.S.C. § 844(e). (Crim. Doc. 11) Schipke was found guilty by a jury of threatening to use a weapon of mass destruction, and found not guilty of willfully making a threat. (Crim. Doc. 170) The Ninth Circuit Court of Appeals affirmed Schipke's conviction on August 25, 2008. *United States v. Schipke*, 291 Fed.Appx. 107 (9th Cir. 2008) The mandate was issued on October 17, 2008. (Crim. Doc. 397). A petition for writ of certiorari to the United States Supreme Court was denied on February 23, 2009. *Schipke v. United States*, 129 S.Ct. 1384 (No. 08-8216)[3]

On January 4, 2010, Schipke filed a § 2255 motion to vacate her conviction in CR 04-2195-TUC-JMR. (Doc. 1) Schipke raises four grounds for relief in the motion. In ground one, she alleges that she is actually innocent of the crime. In ground two, she

---

[2] A more complete procedural background recounting Schipke's discharge from imprisonment, term of supervised release, and subsequent proceedings relating to violations of the conditions of her supervised release is provided in the District Court's order dated January 12, 2010, (Doc. 4), but is not included herein because it is not relevant to the present motion before the Court. Additionally, a notice of appeal from the Court's most recent revocation of supervised release on May 23, 2011 was filed on May 25, 2011, and the appeal is presently pending in the United States Court of Appeals for the Ninth Circuit (No. 11-10266).

[3] (Crim. Doc. 451)

alleges violation of her First Amendment free speech and religious rights. In ground three, Schipke alleges malicious prosecution and misapplication of federal law. In ground four, she alleges that her attorneys rendered ineffective assistance of counsel. Supporting facts and legal argument for these four grounds are provided in Schipke's supporting memorandum. (Doc. 2) Numerous additional unnumbered claims are also raised throughout the supporting memorandum, which will be referred to as the "Miscellaneous" claims. (*Id.*)

Because the general factual background has been summarized in the parties' appellate briefs prepared on direct review, the Magistrate Judge will recount only the facts necessary for a disposition of this motion.

II. **DISCUSSION**

1. Timeliness

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a one year period of limitations from the date on which the judgment of conviction becomes final has been imposed on the filing of motions for collateral relief by prisoners in federal custody. 28 U.S.C. § 2255. The Government does not contest the timeliness of the motion. Upon review of the docket, the Court finds the Motion timely filed.

2. Precluded Claims (Ground Two and Miscellaneous Claims)

"When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000)

(citing *United States v. Redd*, 759 F.2d 699, 700-01 (9ᵗʰ Cir. 1985)); *Odom v. United States*, 455 F.2d 159, 160 (9ᵗʰ Cir. 1972) ("The law of this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion.")(citations omitted).

   *a) Ground Two: First Amendment*

Schipke argues a "[v]iolation of [her] First Amendment right to freedom of speech, and freedom of prayer," (Doc. 1, p.5); specifically, that there was never any criminal intent in her statements made to the postal workers, that her statements were "religious in nature" and "protected speech" under the First Amendment. (Doc. 2, p. 16) Schipke maintains that she was exercising her right to imprecatory prayer at the post office, a protected category of speech. (*Id.*, p. 16-17)

This claim is precluded. Schipke argues that her conviction was unconstitutional because the statements for which she was convicted were protected by the First Amendment. But the First Amendment does not preclude restrictions on certain categories of speech having little or no social value, and threats are one such category. *Virginia v. Black*, 538 U.S. 343, 358-59, (2003). A statement qualifies as a "true threat," unprotected by the First Amendment, if it is "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Id.* at 359; *accord R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992)("[T]hreats of violence are outside the First Amendment"); *Watts v. United States*, 394 U.S. 705, 707 (1969) (distinguishing a threat from constitutionally protected speech such as political

- 4 -

hyperbole).

To the extent Schipke is arguing that the issue was not properly considered at trial, the Ninth Circuit affirmed the District Court's instruction to the jury on the intent requirement for a "true threat" under 18 U.S.C. § 2332a(a)(3), *see Schipke*, 291 Fed.Appx. at 108, and thus, properly instructed, whether Schipke's speech constituted a "true threat" was appropriately submitted to the jury. *See United States v. Hanna,* 293 F.3d 1080, 1087-88 (9th Cir. 2002)(where there are material facts in dispute or it is not clear that the communications are protected expression or true threats, it is appropriate to submit the issue, in the first instance, to the jury, for a determination, in light of the entire context of the defendant's statements, including "the surrounding events, the reaction of the listeners, and whether the words are expressly conditional.")(citing *Planned Parenthood of the Columbia/Willamette, Inc. v. Am. Coalition of Life Activists*, 290 F.3d 1058, 1070 (9th Cir. 2002)(*en banc*); *United States v. Mitchell*, 812 F.2d 1250, 1255 (9th Cir. 1987)); *see also* R.T. 08/11/05, p. 108 (submitting issue of intent to jury and instructing the jury on the definition of "true threat")

To the extent Schipke is arguing that the evidence was insufficient to demonstrate a "true threat", again, this claim is precluded. The Ninth Circuit refuted Schipke's sufficiency of the evidence argument on direct review and affirmed the judgment. *See Schipke*, 291 Fed.Appx. at 108

b) *Miscellaneous Claim: Speedy Trial*

Schipke argues that her constitutional right to a Speedy Trial was violated. (*See*

Doc. 2, p. 12, 35-36) In her direct appeal, Schipke argued that her rights under the Speedy Trial Act were violated. The Court of Appeals decided this issue against her. *See Schipke*, 291 Fed. Appx at 108. Because this issue (although raised on statutory grounds) was decided against her on her direct appeal, Schipke is precluded from raising it in her motion for post-conviction relief. *See United States v. Scrivner*, 189 F.3d 825 (9th Cir. 1999).

Alternatively, Schipke has procedurally defaulted this issue, (*see* discussion of procedural default, *infra*), because she could have raised the "constitutional speedy trial rights" claim in her direct appeal. Further, Schipke has failed to cite any authority that would support her claim that her constitutional right to a speedy trial was violated.

Accordingly, the Magistrate Judge recommends that the District Judge find ground two and the miscellaneous claim of speedy trial violation precluded from review, and deny these claims.

3.     Procedurally Defaulted Claims (Ground Three and Miscellaneous Claims)

The United States Supreme Court has "long and consistently affirmed that a collateral challenge may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' … or that he is 'actually innocent.' *Bousley v. United States*, 523 U.S. 614, 622 (1998)(internal citations omitted). The "cause and prejudice" standard requires the petitioner to show that "some objective factor

external to his defense" impeded her counsel's efforts to raise the issue. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). For example, a showing that the factual or legal basis for the claim was not reasonably available to counsel would constitute "cause." *Id.* However, counsel's ignorance or inadvertence does not qualify as "cause." *Id.* In addition, the petitioner must show that the error he alleges "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. The mere possibility of prejudice is not enough. *Id.* It is a well-settled principle that to obtain collateral relief, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *Id.* at 166. "[A]n error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* at 165 (citation omitted). To establish actual innocence, the petitioner must demonstrate that in light of all of the evidence, it is more likely than not that no reasonable juror would have convicted him. *Bousley*, 523 U.S. at 623 (citations omitted). Furthermore, actual innocence means "factual innocence," not mere legal sufficiency. *Id.* Furthermore, though "[c]onstitutionally ineffective assistance of counsel constitutes cause sufficient to excuse a procedural default," *see United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003)(citation omitted), "the failure to take a futile action can never be deficient performance" *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

a) *Ground Three: Malicious Prosecution and Misapplication of Federal Law*

Schipke asserts that, because the Attorney General failed to first certify that the alleged crime was one of terrorism, Schipke was prosecuted in violation of 18 U.S.C. §

2332(d)'s limitation on prosecution. (Doc. 2, p. 22) Because Schipke failed to raise this claim on direct review, this Court is precluded from considering this claim because it is procedurally defaulted.[4]

Alternatively, even if this Court were to consider the merits of the prosecutorial limitation claims, this claim is without merit as the limitation on prosecution in section 2332(d) only applies to persons outside the United Sates who commit "homicide," "attempts conspiracy to commit homicide" or "physical violence" against a national of the United States under 18 U.S.C. §2332, and thus it does not apply to the charge against Schipke under §2332a.

Schipke's claim of malicious prosecution in ground three is not cognizable in a § 2255 motion. *See* 28 U.S.C. § 2255 (providing four grounds for relief: 1) sentence imposed in violation of the Constitution or laws of the United States; 2) the court was without jurisdiction to impose such sentence; 3) sentence in excess of maximum authorized by law; and 4) sentence is otherwise subject to collateral attack.). While not specifically plead, the tort claims alleged by Plaintiff are considered by the United States to be an action under the Federal Tort Claims Act ("FTCA") 28 U.S.C. §§ 1346(b)(1) and

---

[4] Though the American Civil Liberties Union Foundation of Arizona (ACLU) filed an Amicus Curiae brief raising a similar issue; *i.e.* that prosecuting Ms. Schipke as a terrorist constituted prosecutorial abuse and misapplication of federal law, (*see* Doc. 1-1, p. 24), this is insufficient to preserve the claim because, as acknowledged by the ACLU, the claim was not raised by Schipke, (*id.*, p.17, n.2), neither was it adopted by Schipke nor was it considered by the appellate court on review (*see Schipke*, 291 Fed.Appx. at 108). *See Swan v. Peterson*, 6 F.3d 1373, 1383 (9th Cir. 1993)(issue waived when defendants failed to adopt amicus' argument by reference in their brief.) Furthermore, the claim raised by the ACLU in the amicus brief, and Schipke's claim raised in the present motion, to the extent she has elaborated on the claim, though similarly titled, are supported by different factual and legal grounds.

2671 *et seq*. The FTCA provides that a suit against the United States shall be the exclusive remedy for persons with claims for damages resulting from the negligent or wrongful acts or omissions of federal employees taken within the scope of their office or employment. 28 U.S.C. § 2679(b)(1).

To the extent Schipke is attempting to raise a vindictive or selective prosecution claim, such claim would be procedurally defaulted. Moreover, though section 2255 imposes a fairly lenient burden on the petitioner, the petitioner is nonetheless "required to allege specific facts which, if true, would entitle him to relief." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996); *see United States v. Johnson*, 988 F.3d 941, 945 (9th Cir. 1993)("Merely conclusory statements in a § 2255 motion are not enough to require a hearing")(quotations omitted). In order to show selective prosecution, a criminal defendant must show disparate treatment and that the prosecution was improperly motivated. *Wayte v. United States*, 470 U.S. 598, 608-610 (1985). In order to show vindictive prosecution, a defendant must show actual vindictiveness, *see United States v. Goodwin*, 457 U.S. 368, 380-81 (1982) (vindictive prosecution claim requires evidence of actual vindictiveness), or facts sufficient to give rise to a rebuttable presumption of vindictiveness, *see id.*, at 373 (presumption of vindictiveness appropriate where "reasonable likelihood" vindictiveness exists on other grounds).

Schipke alleges that the United States Attorney was "fired by the Bush Administration in 2007, for his many improprieties while in office – of which the S[chipke] case was one of the top heinous violations!", that the U.S. Attorney bragged

about having the highest number of "terrorist prosecutions" while in office, and that both the U.S. Attorney and the Tucson prosecutor who handled the case are now in private practice. (Doc. 2, p. 23) Schipke's allegations fail to provide sufficient facts to support a claim of either selective or vindictive prosecution.

### b) Miscellaneous Claim: Perjured Testimony

Schipke alleges perjury by the postal clerks (Doc. 2, p. 11, 13, 16, 30) and by the postal inspector (*id.*, p. 12). Specifically, Schipke alleges that the postal workers filed a false bomb threat and intentionally misquoted Schipke, and that the postal inspector lied to the Grand Jury in order to gain a wrongful conviction against Schipke. (Doc. 2, p. 16, n.21) Schipke argues she was "framed" and her true words misquoted and taken out of context by the postal workers. (Doc. 2, p. 6-7)

As the Government correctly asserted in its responsive brief, Shipke procedurally defaulted this claim because she could have raised it during the trial and in her direct appeal but failed to do so. *See Bousley*, 523 U.S. 614.

Alternatively, Schipke's contention that she was "framed" is not supported by the record. To prevail on such a claim, a criminal defendant must show that (1) the testimony or evidence was actually false; (2) the prosecution knew or should have known that the testimony was actually false; and (3) that the false testimony was material. *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003). Schipke's claim does not satisfy this standard; Schipke has failed to present anything other than her own self-serving allegations that false testimony was presented against her during the trial. Accordingly,

the claim should be denied.

### c) Miscellaneous Claim: Venue

Schipke asserts that "the Tucson Federal Court does not have proper Venue to hear this §2255 action" and her motion to transfer venue to the Federal District Court in Phoenix was improperly denied. (Doc. 2, p. 1, p.11)

A motion to change venue was denied by the trial court on July 22, 2005. (Crim.Doc. 134) As the Government correctly asserted in its responsive brief, Shipke procedurally defaulted this claim because she could have raised it on direct review, but failed to do so. *See Bousley*, 523 U.S. 614.

### d) Miscellaneous Claim: Denial of Abby Johnson's testimony

Schipke argues that she asked for the trial to be postponed until her only witness could be brought to testify, but was refused by the trial court, and thus, this exculpatory evidence was never heard. (Doc. 2, p. 11)

Because Schipke could have raised this issue in her direct appeal, but failed to do so, the claim has been procedurally defaulted. *See Bousley*, 523 U.S. 614.

### e) Miscellaneous Claim: Prosecutorial Misconduct – Horseshoe Juror Incident

Schipke alleges that the prosecutor's office conspired to have the only juror she was happy with removed from the jury. (Doc. 2, p. 37) Schipke alleges she demanded to keep the juror, and, after the trial judge removed the juror, the remaining jurors were permanently tainted and biased as a direct result. (*Id.*, p. 37-38)

Because Schipke could have raised this issue in her direct appeal, but failed to do so, the claim has been procedurally defaulted. *See Bousley*, 523 U.S. 614.

Moreover, a review of the record in this case directly contradicts many of Schipke's factual assertions regarding this claim, (*see* R.T. 08/11/05 at 65-68), and Schipke has failed to present any evidence of bias as a result of this incident. Movant cannot establish the need for a hearing through a showing of mere conclusory statements. *See Johnson*, 988 F.3d at 945.

### f) Miscellaneous Claims

Schipke raises a litany of factually unsupported claims for which the Court cannot grant relief. Although section 2255 imposes a fairly lenient burden on the petitioner, the petitioner is nonetheless "required to allege specific facts which, if true, would entitle him to relief." *McMullen*, 98 F.3d at 1159. The following claims are no more than simple allegations, bald assertions, or merely conclusory statements, and for this reason alone should be denied (*see Johnson*, 988 F.3d at 945):  judicial misconduct (Doc. 2, p. 11); illegality of sentence (Doc. 2, p. 11); confined under a void conviction for four years (Doc. 2, p. 11); Eighth Amendment violations [pre-trial] (Doc. 2, p. 12); Fourth Amendment violations (denial of witnesses) (Doc. 2, p. 12); inconsistent statements by witnesses (Doc. 2, p. 12); diminished mental capacity (Doc 2, p. 12); double jeopardy (Doc. 2, p. 12), and; irresistible impulse (PTSD) (Doc. 2, p. 12).

Furthermore, these claims are procedurally defaulted because they could have been raised during the trial and in her direct appeal but were not. S*ee Bousley*, 523 U.S.

614.

As to ground three and the miscellaneous claims discussed above, Schipke has demonstrated neither cause excusing her procedural default nor actual prejudice resulting from the claim of error. *See Johnson*, 988 F.2d at 945 (9th Cir. 1993)(merely conclusory statements insufficient to demonstrate cause or prejudice resulting from claim of error).

Accordingly, the Magistrate Judge recommends that the District Judge deny ground three and the miscellaneous claims of perjured testimony, venue, denial of Abby Johnson's testimony, prosecutorial misconduct (horseshoe juror) and the miscellaneous factually unsupported claims as procedurally defaulted.

Additionally, the Magistrate Judge recommends that the District Judge alternatively deny the following miscellaneous claims for failing to allege specific facts which, if true, would entitle Schipke to relief: judicial misconduct; illegality of sentence; confined under a void conviction for four years; Eighth Amendment violations [pre-trial]; Fourth Amendment violations (denial of witnesses); inconsistent statements by witnesses; double jeopardy, and; irresistible impulse (PTSD). Movant cannot establish the need for a hearing through a showing of mere conclusory statement.

### 4. Miscellaneous Claims: Civil Rights; Discrimination; Treaty Violations

Movant also seeks relief for claims concerning "gross infringements" of her "civil rights" which she contends occurred both pre-trial, and during her prosecution. (Doc. 2, pp. 2, 12, 17)  Requests for relief turning on the circumstances of confinement fall outside § 2255. *See* 28 U.S.C. § 2255 (providing four grounds for relief: 1) sentence

imposed in violation of the Constitution or laws of the United States; 2) the court was without jurisdiction to impose such sentence; 3) sentence in excess of maximum authorized by law; and 4) sentence is otherwise subject to collateral attack.). To seek relief against prison officials for violations of constitutional or federal statutory rights, a federal inmate must file an action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), rather than a habeas petition. *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *see Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("constitutional claims that merely challenge the conditions of a prisoner's confinement, whether the inmate seeks monetary or injunctive relief, fall outside [the] core [of habeas relief] and may be brought pursuant to § 1983"); *Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . ; requests for relief turning on the circumstances of confinement may be presented in a § 1983 action."); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (a civil rights action is the proper method to challenge conditions of confinement)).

The miscellaneous claims that should be dismissed for failure to state a cognizable claim under 28 U.S.C. § 2255 include: mass violations of Schipke's protected rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States of America and Arizona Constitutions; (Doc. 2, p. 2); violation of international laws and other treaties; (Doc. 2, p. 2); violations under the ADA, the Arizona ADA (Doc. 2, p. 2, 12); Eighth Amendment violations [post-trial](Doc. 2, p. 12); Suffering from "prison

shock" and "Torture Syndrome" (Doc 2, p. 4-5) due to brutal torture, psychological terrorism, gross medical neglect and sadistic abuse while in prison; loss of Section 8 housing, denial of assistance and benefits (Doc. 2, p. 5); conspiracy to violate civil rights (18 U.S.C. §241 (Doc. 2, p. 12, 17)); and abused as a venerable adult in violation of the Second Chance Act and the Rehabilitation Act of 1973 – Section 504; the ADA; and A.R.S. § 13-3623 (Doc. 2, p.12).

     5.    Ground One: Actual Innocence

Schipke argues as grounds for granting her petition, her "Absolute" and "Complete and Total Innocence." (Doc 1, p. 4[5]; Doc. 2, p. 11) Schipke submits that she "never made any threat or violated the law." (Doc. 1, p. 4)

The Government contends first, that there is no basis for relief in a § 2255 motion for a claim of actual innocence because it is not, by itself, a claim of constitutional error, citing *Herrera v. Collins*, 506 U.S. 390, 398-402 (1993); and, second, that such a claim is a mere restatement of Schipke's insufficient evidence claim, raised and decided on appeal, and now precluded from further review. (Doc. 11, p. 4-5)

While the Supreme Court in *Herrera* left open the question whether freestanding innocence claims are cognizable under federal law, *see Herrera*, 506 U.S. at 417, and whether there should be a distinction between capital and non-capital cases, *id.* at 405, the Ninth Circuit has recognized that a claim of actual innocence is cognizable under 28

---

[5]For ease of reference the Court will refer to the page numbers of documents that have been assigned to the document by the Court's Case Management/Electronic Filing (CM/ECF) system.

U.S.C. § 2255, *see United States v. Berry*, 624 F.3d 1031, 1038, n.5 (9th Cir. 2010) (citing *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997)(*en banc*) (holding that a prisoner's freestanding innocence claim must "go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent"); *Osborne v. District Attorney's Office*, 521 F.3d 1118, 1130-31 (9th Cir. 2008) *rev'd and remanded on other grounds*, --- U.S. ---, 129 S.Ct. 2308 (2009).

The Ninth Circuit concluded that the threshold for a freestanding claim of innocence would have to be "extraordinarily high" and "contemplates a stronger showing than insufficiency of the evidence to convict." *Carriger*, 132 F.3d at 476. In *Carriger*, the Ninth Circuit considered evidence that cast a "shadow of a doubt over the reliability of [the defendant's] conviction" serving to "undercut the evidence presented at trial" including a sworn confession by another suspect exonerating the defendant as well as other evidence implicating the affiant, and found that, though the evidence was sufficient to satisfy the *Schlup*[6] gateway standard permitting consideration of a procedurally barred claim, the evidence still fell short of affirmatively proving the defendant more likely than not was innocent. *Carriger*, 132 F.3d at 477. The Ninth Circuit found the defendant failed to present such evidence, for example, demonstrating that he was elsewhere at the time of the commission of the crime, or new and reliable physical evidence, such

---

[6] *See Schlup v. Delo*, 513 U.S. 298, 327 (1995)(Holding that to permit consideration of his procedurally barred claims, a petitioner must show that in light of all the evidence, including new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.")

as DNA, that would preclude any possibility of defendant's guilt.

Given the extraordinarily high standard contemplated in *Carriger*, Schipke's actual innocence claim is foreclosed by the Ninth Circuit's memorandum decision, filed on October 17, 2008 (Case No. 06-10135), affirming the judgment and finding that:

> The government introduced sufficient evidence at trial that Schipke threatened to use a destructive device against property leased by the United States. See 18 U.S.C. § 2332a(a)(3). Several witnesses testified that Schipke threatened to detonate a bomb at the Oracle Post Office, which is located in a building leased by the federal government.

*United States v. Schipke*, 291 Fed.Appx. 107, 108 (2008).

Here, having failed to meet the lesser standard of insufficiency of the evidence, and failing to present any new, reliable, "truly persuasive" affirmative evidence of "actual innocence" in this motion, Schipke has failed to meet the "extraordinarily high" threshold of affirmative proof required to establish a successful freestanding claim of actual innocence.

6.     Ground Four: Ineffective Assistance of Counsel

Schipke's fourth ground for relief is an ineffective assistance of counsel claim. (Doc. 1, p.9) Schipke states that each of three attorneys that represented her was ineffective. (Doc. 2, p.4)

The two-prong test for establishing ineffective assistance of counsel was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-88. There is a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 689-90.

Deficient performance requires that counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 694. Schipke must also show prejudice resulting from deficient performance by counsel. To show prejudice a criminal defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 694; *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir. 2002), *amended by* 311 F.3d 928 (9th Cir. 2002). A reviewing court can reject a claim based upon a failure to meet either part of the two prong test. *See Thomas v. Borg*, 159 F.3d 1147, 1151 (9th Cir.1998); *United States v. Palomba*, 31 F.3d 1456, 1461 (9th Cir. 1994); *see also Strickland*, 466 U.S. at 687.

Schipke argues that her trial counsel was ineffective because she failed to impeach the credibility of the perjured testimony of the lying post office workers. (Doc. 2, p.11) She cites no affidavits or specific evidence or information, only speculation and conclusory statements, and therefore, this claim fails. *See McMullen*, 98 F.3d at 1159.

Schipke maintains her counsel was ineffective for failing to enter either of two 911 transcripts into evidence, or to play the recorded calls in open court. (Doc. 2, p.32) This claim is factually refuted by the record. Presumably, the first of two calls Schipke refers

to is the 911 call made by the postal employee Chavez at the time of the incident. This call was admitted into evidence and played to the jury. (R.T.[7] 8/10/05, p. 108-09; Crim. Doc. 185) The second 911 call refers to a call made by Schipke herself. This call was also admitted into evidence and played to the jury. (R.T. 8/10/05, p. 145, Crim. Doc. 185) Thus the record contradicts Schipke's claim.

Schipke contends that her counsel was ineffective for failing to introduce a recorded statement allegedly made by Schipke to the postal inspector before she was arrested. Schipke asserts in her memorandum that she left a telephone message concerning what happened and stated that she wanted the postal workers prosecuted. (Doc.#2 at p. 32). Government's counsel states that he has spoken to Alan Anderson concerning the first statement Schipke claims she made, and that Agent Anderson has no recollection of any such message. Though the Government failed to file an affidavit in support of this contention, counsel's unsworn statement is corroborated by Inspector Anderson's sworn testimony from the trial that he was not aware that any such call was made. (R.T. 8/10/05, p. 145) Moreover, the Government correctly argues that, even if the Schipke attempted to admit the statements into evidence, they would have been inadmissible hearsay. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (non-self-inculpatory statements offered by the accused are inadmissible hearsay). Even assuming that the statements might have been admitted for some non-hearsay purpose, there is no reasonable probability that the outcome of the trial would have been different.

---

[7] "R.T." refers to the Reporter's Transcript filed in the related criminal matter, CR 04-2195-TUC-CKJ.

Schipke presented her defense directly to the jury by testifying at trial. (R.T. 8/11/05, p.62) Therefore, this claim should be denied.

Schipke claims that, at the time of the incident, she was highly medicated with large amounts of doctor-ordered prescription pain medication, "i.e., 160 mg. per-day of O[x]ycontin, 1000 mg. per day of Hydrocodone, 1350 mg. per-day of Soma, and 20 mg. per-night of Valium." (Doc. 2, p. 24, n.35) Schipke argues that this "involuntary drug-addiction" caused diminished responsibility and capacity in Schipke because her mental functions were impaired, and that it should have been brought up by her trial attorney as a "partial defense" but never was. (*Id.*, p.7, n.10, 12) Schipke argues that counsel failed to use a temporary insanity defense, and failed to call a medical expert to explain to the jury how much medication she was taking at the time of the incident, and to explain the effect of temporary insanity by involuntary drug addiction. (*Id.*, p. 11)

Though the record provides some support for the claim that the performance of Schipke's counsel fell below the standard of competence required under *Strickland v. Washington*, 466 U.S. 668 (1984),[8] the Court cannot conclude that *Strickland's*

---

[8] The Government acknowledges that, during an interview with defense counsel, counsel stated that she believed that she could not present inconsistent defenses based on the facts of this case. (Doc. 11, p. 14, n.8; *Id.*, Doc. 11-1, Ex. 2, p. 6). If counsel's choice was based on a misunderstanding of the law, then retroactively labeling that choice "strategic" does not immunize an attorney's performance from sixth amendment challenges. *See United States v. Span*, 75 F.3d 1383, 1390 (9th Cir. 1996) ("counsel's performance is constitutionally deficient if "[c]ounsel's errors … were not a strategic decision to forego one defense in favor of another" but "the result of a misunderstanding of the law."). It is not evident from the record before this Court whether counsel's decision not to present evidence of intoxication to rebut the government's evidence of specific intent was tactical, or based on counsel's misunderstanding of the law. Counsel discussed several

- 20 -

"prejudice" requirement is also satisfied. Because the issues surrounding the "prejudice" component of the *Strickland* test are conclusively settled by the trial record alone, we need not remand this claim for an evidentiary hearing. *See Shah,* 878 F.2d at 1159. Because Schipke is challenging her conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Luna*, 306 F.3d at 961.

In the federal courts, diminished capacity may be used only to negate the *mens rea* of a specific intent crime. *United States v. Twine*, 853 F.2d 676, 679 (9th Cir, 1988). The Insanity Defense Reform Act, (IDRA), 18 U.S.C. § 17(a), bars psychiatric evidence relating to a defendant's mental condition – short of insanity – if such evidence is in the nature of "a legal justification or excuse for otherwise criminal conduct," but permits this type of evidence if, rather than justifying defendant's conduct, it "negates an essential element of the government's *prima facie* case." *United States v. Cameron*, 907 F.2d 1051, 1065 (11th Cir. 1990). The "IDRA does not prohibit psychiatric evidence of a

---

"tactical" or "strategic" reasons for choosing not to present a diminished capacity defense. The most convincing evidence that this decision was purely tactical at the time it was made can be found in a letter from counsel, to Schipke, prior to trial, in which counsel presents several persuasive strategic reasons for choosing to not pursue a diminished capacity defense. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Presumably, if counsel thought *at the time* that she was legally or ethically constrained from presenting such a defense, she would have explained that in this letter to her client, as it would have been the most direct explanation for not presenting such a defense.

mental condition short of insanity when such evidence is offered purely to rebut the government's evidence of specific intent, although such cases will be rare." *United States v. Worrell*, 313 F.3d 867, 874 (4th Cir. 2002) In other words, the IDRA allows evidence that shows that a defendant "did not do it," *i.e.*, lacked the capacity or was incapable of forming the specific intent necessary for the crime charged, but not that "he could not help it, " *eg.*, evidence that is in the nature of a legal justification or excuse for otherwise criminal conduct, such as unconscious motivation or lack of volitional control. *Id.*, at 873-74. The diminished capacity defense "is directly concerned with whether the defendant possessed the ability to attain the culpable state of mind which defines the crime" *Twine*, 853 F.3d at 678 (citations omitted), and thus, psychiatric evidence is admissible to negate *mens rea* only when the evidence focuses on the defendant's specific state of mind at the time the offense was committed. *United States v. Westcott*, 83 F.3d 1354, 1358 (11th Cir. 1996). An example of inadmissible evidence regarding a defendant's mental condition would be testimony that a defendant, who failed to meet IDRA's definition of insanity, committed a crime because of a "supposed psychiatric compulsion or inability or failure to engage in normal reflection." *United States v. Pohlot*, 827 F.2d 889, 896 (3rd Cir. 1987). A defendant can attempt to establish an inability to form the requisite intent by reasons of intoxication. *United States v. Erskine*, 588 F.2d 721, 722 (9th Cir. 1978)(citing *United States v. Hartfield*, 513 F.2d 254, 260 (9th Cir. 1975), abrogated on other grounds by *United States v. Sneezer*, 900 F.2d 177, 179, n3 (9th Cir. 1990). A defendant may establish intoxication through the use of prescription

medications which deprive her of the mental capability of forming and having the specific intent to commit the crimes with which she is charged. *United States v. Echeverry*, 759 F.2d 1451 (9th Cir, 1985). In this case, the specific intent element the Government was required to prove was the intent that "her words or conduct be understood as a threat," specifically, an intent to "communicate a serious expression of an intent to commit an act of violence upon an individual or group of individuals or the United States Post Office in Oracle, Arizona." (Crim.Doc. 188, p.14-15).

Schipke's own assertions demonstrate the deficiency in her claim. Schipke asserts that a forensic neuropsychological and neurobehavioral toxicology evaluation of Schipke, by Dr. Singer, a Forensic Neuropsychologist, and submitted by counsel at the time of sentencing, supports her claim that she was "physically unable to control her verbal outburst because of being involuntarily addicted to large amounts of Oxycontin, Hydrocodone, Soma, and Valium." (Doc. 2, p. 7-8, n.12) Evidence of Schipke's alleged inability to control her behavior would not be permissible under the IDRA. *See Pohlot*, 827 F.2d at 896; *Cameron*, 907 F.2d at 1061 ("Psychiatric evidence of impaired volitional control or inability to reflect on the ultimate consequences of one's conduct is inadmissible whether offered to support an insanity defense or for any other purpose.").

Furthermore, even assuming counsel's performance was deficient, there was no prejudice from any failure to investigate or present an intoxication defense in this case because the evidence of Schipke's intent was overwhelming. There is nothing in the record that suggests that Schipke's alleged use of prescribed medication left her

intoxicated on the day of the offense. Schipke has described her use of language and choice of words at the time of the offense as "not vague – they were precise, direct, and to the point." (Doc. 2, p. 8)

Moreover, specific intent is determined "from all the facts and circumstances surrounding the case." *United States v. Sirhan*, 504 F.2d 818, 819 n. 2 (9th Cir. 1974). The record before us is replete with testimonial evidence of Schipke's behavior and communications. Review of this evidence leads to the inescapable conclusion that Schipke intended to "communicate a serious expression of an intent to commit an act of violence upon an individual or group of individuals or the United States Post Office in Oracle, Arizona." (Crim.Doc. 188, p.15). Schipke's testimony during her trial makes clear that Schipke acted with considerable awareness of what she was doing and with considerable purpose. Despite her self-serving claims that "her mental functions were impaired," there is no indication in the record that Schipke's alleged state of intoxication at the time of the offense was of such severity as to establish a viable defense to the specific-intent element of the crime with which she was charged.

Schipke testified that she drove herself to the post office, without apparent incident, (R.T. 8/11/05, pp. 35-36); checked her postal box for mail (*id.*, p. 37); went back to her car and filled out a "long, lengthy welfare form" (*id.*, pp. 37-38); returned to the post office with the purpose of buying a stamped envelope (*id.*, p. 38); requested the envelope and showed the postal worker the size of the form in order to obtain the right size envelope (*id.*, p. 42-43); requested the stamped envelope again because "I wasn't

through with my business at the post office. I went in there for a stamped envelope. I didn't have one. I needed a stamped envelope" (*id.*, p.43); recognized that she was getting frustrated, and tried "not to blow up" (*id.*, p. 49); looked at the postal worker and said "God, I pray a bomb falls on your stupid fucking head" because "I wanted to flush her away… it's one of my favorite rants….I'm praying for bombs. I'm praying for just something to take this whole nightmare away." (*id*, p. 49); denied saying it with the intent to place the postal worker in fear, but rather "it was kind of a rude, sarcastic verbal response to her verbal assault against me" because "[s]he [the postal worker] started it" and "maybe if you give someone a good swift kick in the butt, maybe they'll do their job" (*id.*, p. 43,50). After the 911 call was placed by the postal workers, Schipke purchased the envelope and filled it out even though she knew the cops were on the way because "…so what, I didn't break the law. You know, praying for bombs is not a crime. … It may be socially inappropriate, but I did it, so whatever." (*Id.*, p. 54) Thereafter, Schipke mailed the envelope outside the post office, (*id.*, p. 57); drove to the San Manuel golf course to check on repairs being made to her scooter, (*id.*, p. 58); went to the bar to use the phone to call the public library to research the law, because she believed the postal worker had filed a false report, (*id.*, p. 58-59); drove to the "Minit Mart" to call 911 to report the postal worker (*id.*, p. 60); continued on to two different stores to run errands, and then drove back to her house in Oracle, (*id.*, p. 61); and called the postal inspector and left him a message (*id.*, p. 61-62). Later, she typed out two detailed summaries of her recollection of the events of that day, (*id.*, pp. 45-46). Schipke's testimony demonstrates that she was

fully aware of what she was doing.

Schipke contends that a forensic neuropsychological and neurobehavioral toxicology evaluation by Dr. Raymond Singer, obtained post-trial for purposes of sentencing, supports her claim. Much of Dr. Singer's report on what he describes as Schipke's "Neuropsychological conditions at the instant offense" (Crim.Doc. 272, p.14-15) describe a litany of possible side effects a person might experience when using the medications prescribed to Schipke. Dr. Singer discussed the possibility of reaching an "overdose" level of medication when pain medication was combined with other drugs, even when all the drugs are taken according to a doctor's prescription, but did not specifically discuss the side effects from the dosage of medication that Schipke was allegedly taking at the time of the offense, how these drugs affected Schipke specifically, her length of treatment with these medications, nor did he diagnose her with prescription drug over-medication or overdose. (*id.*, p. 16-17) Dr. Singer did review the amount of medications that Schipke claimed she was taking at the time of the offense, and opined that "it is likely that the combination of medications created a mental state in [Schipke] at that time that was conducive to lapses of executive function. … In other words, the mental and emotional characteristics of [Schipke] at the time of the offense was probably that of a clouded mental and emotional state, due to heavy prescription medication for pain, reducing Ms. Schipke's culpability." Dr. Singer's noted several symptoms that Schipke showed at the time of the offense which were consistent with the listed side effects of the medication that Schipke was prescribed: confusion, mood changes, mental

cloudiness, anxiety, dizziness, vertigo, ataxia, tremor, agitation, and irritability. (Crim.Doc. 272, p. 15) Dr. Singer's opinion, however, says nothing about the ability of Schipke to form specific intent at the time of the offense. Additionally, although, Dr. Singer noted many of these same symptoms in Schipke at the time of his interview with her, notably "neurotoxicity … affecting learning, some aspects of memory, and executive function" including the "ability to plan, manage, judge, control impulses, etc.," as well as anxiety, tension, confusion, fatigue, deficits in working memory and processing speed, and bewilderment, Dr. Singer described Schipke as "well-organized and reliable" and that her speech matter was "well spoken, thoughtful, candid, open, and frank" and her speech-cognition was "coherent, relevant, integrated, goal directed, logical and pertinent." (Crim.Doc. 272, p. 9-10)  Dr. Singer went even further to describe, despite Schipke's mental impairments and her conclusions which "may strike the listener as bizarre," the rationality of Schipke's beliefs and opinions, and her normal emotional and personality function, noting that Schipke insisted "that she only prayed at the post office, and did not threaten." (Crim. Doc. 272, p. 12-13). Thus, Dr. Singer's report fails to demonstrate that, despite the exhibition of some symptoms of side effects at the time of the offense that might have resulted from the medication Schipke was prescribed, that she was unable to form the specific intent at the time of the offense.

Schipke has not shown that a reasonable probability exists that the outcome of the case would have been different if her attorney had pursued an intoxication defense. Although there is evidence that Schipke may have been experiencing some side effects

from her medication, Schipke's clear recall of the events that night, her purposeful, focused actions at the time of the offense and shortly after, her maintenance, even now, that her word choice at the time was "precise, direct, and to the point," even if her testimony was sharply divergent from all other witnesses, weighs heavily against the success of an intoxication defense. Notwithstanding the fact that Schipke's version of the events differed from that of the other witnesses, she presented, and continues to argue, a rational explanation for her behavior. Further, there is no support in Dr. Singer's report that her intoxication prevented her from forming the requisite intent. In short, there is no evidence before this court that further investigation into a possible mental health defense would have resulted in a viable defense.

Schipke has not demonstrated a reasonable probability that, had counsel further investigated or raised the purported defense, it would have met with success, or, in fact, that there would have been any support for such testimony at all. Accordingly, Schipke fails to meet her burden under *Strickland* and shows no basis for federal habeas relief.

Schipke argues that her counsel was ineffective for failing to call for a mistrial after several critical legal errors. (Doc. 2, p.11) Schipke elaborates on only one incident in her supporting memorandum. (Doc. 2, p. 38) Schipke asserts that, after her outburst in court directed at a juror whose later request to be removed from the jury was granted, the jury was "irreparably tainted and biased against [her] from that point forward." (*Id.*) Schipke argues that the incident with the juror should have caused a call for an immediate mistrial by the trial attorney, and her counsel was ineffective for failing to do so. (*Id.*)

As the Government correctly asserts, whether to remove the juror was a tactical decision consigned to the defense counsel, and Schipke has shown neither that the decision was deficient professional performance nor that there was any prejudice, as required by *Strickland*. Prior to the twelfth juror being excused, Schipke's attorney made the following statement: "I had a chance to consult with Ms. Schipke about the issue. We have no objection to [the juror] being excused and proceeding with just eleven jurors." (RT 08/11/05 at p. 96.) Thereafter, Schipke's attorney stated that the defendant wished to "voir dire" the juror before he was excused. (RT 08/11/05 at p. 98.) After questioning this juror, the defense counsel stated again that "the defense" had no objection to proceeding with eleven jurors. (RT 08/11/05 at p. 100). The Court required that this decision be memorialized in writing. *Id*. The written agreement of the parties stated that the defense had no objection to proceeding to trial with eleven jurors. *Id*. This agreement was signed by Schipke and her attorney. *Id*. This record establishes that, contrary to the Schipke's assertions, she expressly agreed to proceed with the trial with eleven jurors. Accordingly, Schipke's claims regarding the jurors should be denied.

Schipke argues that counsel was ineffective for failing to use other legal defenses, "i.e., Entire Incident Was Caused By Systemic Failure To Assure S[chipke] was Receiving Court-Ordered In-Home Attendant Care Services For Her Disability Needs". (Doc. 2, p.12)

"[Schipke] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy." *Murtishaw v. Woodford*, 255 F.3d 926,

939 (9th Cir.2001). Schipke cites no factual support for her claim, only speculation and conclusory statements, and therefore, her claim fails. *See McMullen*, 98 F.3d F.3d at 1159. Additionally, there is no legal basis for Schipke's suggested defense. As previously noted, counsel's failure to take action that would have been futile can never be deficient performance. *Rupe,* 93 F.3d at 1445.

### 7. Miscellaneous Claims

#### a) Second Wheelchair Incident

Schipke alleges that she was refused access by the U.S. Marshals to a restroom during a recess, and, as a result, she urinated and defecated in her wheelchair. (Doc. 2, p. 39) Schipke alleges she was denied the request to change clothes, and had to "testify before her jury in this soiled, angry state" and "her demeanor before the jury was ruined because of this intentionally provoked incident." (Doc. 2, p. 39-40)

As the Government asserts, this claim is patently false and refuted by the record. Schipke testified on August 11, 2005. (R.T. 08/11/05, p. 33) The alleged "second wheelchair incident" occurred on August 10, 2005, and the trial court granted a request by counsel for a recess to allow Schipke to wash and change clothes before returning to the courtroom. (R.T. 08/10/05, pp. 78-82)

#### b) Denied the Right to Self Representation

Schipke alleges that, after the incident with the twelfth juror, she fired her attorney, but her attorney refused to remove herself. Schipke's allegations, however, that she attempted to fire her attorney but her attorney refused to remove herself, are not

supported by the record. Schipke states that she told her attorney "Go sit at the prosecutor's table because he is doing a better job of defending me than you are!" (Doc. 2, p. 38) This was not an unequivocal request by Schipke to represent herself. A defendant must make an explicit choice between exercising the right to counsel and the right to self-representation so that a court may be reasonably certain that the defendant wishes to represent herself. *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir.1989). This requirement protects against two unacceptable occurrences: an inadvertent waiver of the right to counsel by a defendant's "occasional musings on the benefits of self-representation" and manipulation by the defendant of the mutually exclusive rights to counsel and self-representation. *Id.*

It is evident from the record in this case that at various times Schipke has made her intentions to counsel and to the court to either request a withdrawal of counsel or to represent herself clear and unequivocal. There is no evidence regarding this claim that she made a clear, unequivocal request to counsel to represent herself.

8.   Execution of Sentence

Schipke refers to several claims which challenge the execution of her sentence, in contrast to the imposition of her sentence, and are improperly raised in this § 2255 motion. Such claims are properly brought in a petition under 28 U.S.C. § 2241. The claims raised in Schipke's motion challenging the execution of her sentence which should be dismissed include:  The denial of early release in violation of *Arrington v. Daniels*, 516 F.3d 1106 (9th Cir. 2008) (Doc. 2, p. 12, p. 44, n.88), and the denial of assistance

pursuant to the Second Chance Act, (codified at 18 U.S.C. §§ 3621 and 3624), (Doc. 2, p. 42, n.81). To the extent Schipke is challenging the imposition of disciplinary sanctions in her motion for law library time (Doc. 26), this claim is also properly brought under § 2241.

III.  **MOTION FOR ACCESS TO PRISON LAW LIBRARY**

Schipke alleges that she has been kept "locked-down in isolation" since September 9, 2011, and is further subject to an additional thirty (30) days lock-down pursuant to a disciplinary decision rendered on September 27, 2011. (Doc. 26, p. 2). Schipke contends that she is not allowed access to the law library while she is in lock-down. (*Id.*, p. 3)

The right of meaningful access to the courts prohibits officials from actively interfering with inmates' attempts to prepare or file legal documents. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). The right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to litigate them effectively once filed with a court. *Id.* at 354. The right "guarantees no particular methodology but rather, the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356.

Furthermore, there is no constitutional right of access beyond the pleading stages of a habeas. Compare *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995)("the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a habeas or civil rights action") with *Silva v. Di*

*Vittoriao*, ___ F.3d ___, 2011 WL 4436248 (9th Cir. 2011)(Only the right to pursue litigation efforts without *active interference* extends past the pleading stage).

Even if Schipke had a constitutional right of access at this stage of the proceedings, there is no abstract, freestanding right to a law library or legal assistance. *Casey*, 518 U.S. at 351. An inmate cannot establish actual injury "simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id*. In an access-to-the-court claim, the inmate must submit evidence showing an "actual injury" resulting from defendants' actions, that is, with respect to an existing case, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348. Moreover, Schipke is not entitled to any specific amount of time in the library. *Id*. at 354. Because Schipke claims only that she is denied access to the library, and is requesting "<u>maximum</u> law library time," it is not clear if FMC-Carswell provides emergency library services to inmates in lock-down, or other means of accessing legal reference materials, or if Schipke has been provided these services.

At this stage of the proceedings, however, it is not necessary to make such a determination. Schipke has not demonstrated actual injury, or submitted anything but speculation that she will be unable to work on her § 2255 petition or her several appeals. Movant must demonstrate that she is likely to suffer irreparable harm; mere speculation is insufficient. Mere "[s]peculative injury does not constitute irreparable harm sufficient to warrant granting a preliminary injunction." *Caribbean Marine Services Co., Inc. v.*

*Baldrige*, 844 F.2d 668, 674-675 (9th Cir.1988) (emphasis added).

Accordingly, the Magistrate Judge recommends that the District Court deny this motion. Nonetheless, the Magistrate Judge will grant an extension of time to allow Schipke an additional thirty (30) days after her projected release from lock-down to file objections to this Report and Recommendation.

## IV.    RECOMMENDATION

After careful consideration of the Motion to Vacate, Set Aside, or Correct Sentence and all papers filed in this action, the Magistrate Judge recommends that the District Court deny Movant's motion.

The Magistrate Judge also recommends that the District Court deny Movant's motion for emergency court order for law library time. (Doc. 26)

Any party may serve and file written objections **no later than November 28, 2011.** Any party may respond to objections no later than **December 12, 2011.**

If objections are not timely filed, then the parties' right to *de novo* review by the District Court may be deemed waived. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir 2003) (*en banc*).

If objections are filed, the parties should use the following case numbers: **CV 10-0001-TUC-CKJ and CR 04-2195-TUC-CKJ.**

Dated this 21st day of October, 2011.

Bernardo P. Velasco
United States Magistrate Judge